IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| TK ELEVATOR CORP., ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 7:21-cv-00579 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| WILLIAM SHROPSHIRE, ) | By:  Hon. Thomas T. Cullen |
| ) | United States District Judge |
| Defendant. ) | |

For nearly ten years, Defendant William Shropshire worked for Plaintiff TK Elevator Corp. ("TKE"), a company that sells and repairs elevators. Shropshire eventually resigned from TKE, explaining that he wanted to start an elevator inspection business. As it turns out, Shropshire had already formed a competing elevator repair company. When TKE learned that Shropshire had been operating a competing business, it conducted a forensic analysis of his company tablet and discovered that he had downloaded over a thousand files containing TKE's confidential business information onto a personal hard drive. To protect its business advantage and vindicate what it views as corporate theft, TKE brought suit against Shropshire.

In its complaint, TKE brings six claims: breach of the duty of loyalty, conversion, unfair competition, violation of the Virginia Uniform Trade Secrets Act ("VUTSA"), violation of the Defend Trade Secrets Act ("DTSA"), and breach of the Virginia Computer Crimes Act ("VCCA"). Shropshire has filed a counterclaim for fraud, alleging that TKE promised not to sue him if he cooperated in its forensic investigation. Both parties have filed motions to

dismiss, which are now before the court.[1] For the reasons discussed below, the court will grant in part and deny in part Shropshire's motion to dismiss and grant TKE's motion to dismiss.

## I.   BACKGROUND

The facts are taken from TKE's complaint and Shropshire's counterclaim and, at this stage, are presumed to be true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While factual assertions are entitled to this assumption of truth, legal conclusions couched as factual assertions receive no deference. *See id.*; *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (stating that, on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation").[2]

TKE is an elevator sales and repairs company that operates nationwide. (Compl. ¶ 8 [ECF No. 1].) In 2011 Shropshire began working for TKE as an elevator mechanic in the Roanoke region. (*Id.* ¶ 14.) Over nearly 10 years with the company, Shropshire rose through the ranks, ultimately becoming an Operations Services Manager. (*Id.* ¶¶ 14, 23.) But in December 2020, unbeknownst to TKE, Shropshire formed his own competing elevator repair company, Integral Elevator ("Integral"). (*Id.* ¶ 20.) On January 19 and 20, 2021, about a month before he resigned from TKE, Shropshire downloaded—without permission—over a thousand files containing what TKE characterizes as its "confidential and trade secret information" from his company-issued tablet onto a personal hard drive. (*Id.* ¶ 21.) TKE alleges the job files included "confidential construction drawings and wiring instructions,"

---

[1] The court has reviewed the pleadings and arguments of the parties. Oral argument is not necessary as the facts and legal arguments are adequately presented in the briefs.

[2] Obviously, when ruling on the motion to dismiss claims in TKE's complaint, the facts are viewed in the light most favorable to TKE. When ruling on the motion to dismiss Shropshire's counterclaim, the facts are viewed in the light most favorable to Shropshire.

"links for downloading each job's proprietary software," and "bills of materials containing shipping and packing lists for each job"—information TKE deems "critical" for its business. (*Id.*) Three weeks before his resignation, Shropshire's wife, who also worked at TKE, e-mailed him a report containing confidential information about TKE's scheduled jobs with certain customers. (*Id.* ¶ 22.) Shropshire did not require this report to perform his everyday job functions with TKE. (*Id.*)

Shropshire resigned from TKE on February 26, 2021. (*Id.* ¶ 23.) He told the company that "he was stepping back from the business for a time and 'considering' the 'possibility' of performing elevator inspections." (*Id.*) TKE did not complete elevator inspections. (*Id.* ¶ 20.) But as it turns out, Shropshire had already been operating his competing company, Integral, for over two months. (*Id.*)

When TKE learned this, it hired a third-party investigator to conduct a forensic analysis of Shropshire's tablet. (*Id.* ¶ 28.) The investigator discovered that Shropshire had downloaded 1,571 files containing TKE's "confidential and trade secret information." (*Id.* ¶ 29.) TKE engaged counsel and sent Shropshire a cease-and-desist letter on May 3, 2021. (*Id.* ¶ 30.) Shropshire hired an attorney and, in an attempt to resolve the matter, provided his personal devices to TKE to have the files recovered and deleted. (*Id.* ¶¶ 33–34.) TKE demanded that Shropshire compensate it for the cost of engaging a third-party forensic expert and for the damage it incurred as a result of Shropshire's theft. (Countercl. ¶ 7 [ECF No. 7].) When Shropshire refused to pay, TKE returned his devices and filed this lawsuit. (*Id.* ¶ 8.)

TKE now brings six claims against Shropshire: breach of the duty of loyalty (Count I), conversion (Count II), unfair competition (Count III), violation of the VUTSA (Count IV),

violation of the DTSA (Count V), and breach of the VCCA (Count VI). TKE seeks damages attributable to its costs for hiring third-party forensic experts, legal counsel, and disgorgement of compensation from Shropshire's misconduct, as well as punitive damages. Shropshire moves to dismiss four of TKE's claims: conversion, unfair competition, violation of DTSA, and breach of VCCA.

In his Answer, Shropshire filed a counterclaim against TKE, alleging that TKE's cease-and-desist letter constituted a promise not to sue him if Shropshire cooperated in the company's forensic investigation, and that, by breaking that "promise" and filing this lawsuit, TKE has committed fraud. TKE moves to dismiss Shropshire's counterclaim.

For the reasons discussed below, the court will grant in part and deny in part Shropshire's motion to dismiss and grant TKE's motion to dismiss.

## II.   STANDARD OF REVIEW

Motions to dismiss under Rule 12(b)(6) test the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While a complaint does not need "detailed factual allegations," complaints merely offering "labels and conclusions," "naked assertion[s] devoid of 'further factual enhancement,'" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555, 557).

### III. ANALYSIS

1. **Conversion (Count II)**

Shropshire moves to dismiss TKE's conversion claim on two grounds. First, he argues that conversion claims apply only to tangible property, not electronic data. Second, he argues that the VUTSA preempts a conversion claim that is premised on the misappropriation of trade secrets.

To state a claim for conversion under Virginia law, a plaintiff must allege that a defendant wrongfully exercised dominion or control over its property "in denial of the [plaintiff's] right, or inconsistent with it." *Mackey v. McDannald*, 842 S.E.2d 379, 387 (Va. 2020). While a claim for conversion "typically applies only to tangible property, [the Supreme Court of Virginia] has recognized the conversion of intangible property rights that arise from or are merged with a document . . . ." *Id.* (internal quotation marks omitted). Conversion claims based on the taking of electronic data present the interesting wrinkle of whether this intangible property, that is not merged with a physical document, can be converted if the plaintiff is never fully deprived of its use. In a similar context, the Eastern District of Virginia held that electronic data can be converted. *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, No. 3:09cv58, 2011 WL 4625760, at *5 (E.D. Va. Oct. 3, 2011). The court reasoned:

> The purpose of the tort of conversion is to protect individuals from those who interfere with their property rights in a way that is inconsistent with the full exercise of those rights. In this technology-driven world, the value of intangible property cannot be disputed, and a decision to limit conversion to tangible property or intangible property merged in a document symbolizing ownership would leave [many plaintiffs] unable to use an action for conversion for substantial interference with their rights.

*See id.*

Shropshire attempts to analogize the electronic data at issue in this case with the trade secret information at issue in *Darton Environmental, Inc. v. FJUVO Collections, LLC*, 332 F. Supp. 3d 1022, 1031–32 (W.D. Va. 2018). In *Darton*, the court dismissed the plaintiff's conversion claim because the plaintiff did not allege "that the technology or trade secrets were ever written down in any documents, let alone that Defendant gained access to those documents." *Id.* at 1033. But the plaintiff's conversion allegation was based on photographs the defendant took of the plaintiff's machinery while it toured the factory. *Id.* The defendant did not steal any photographs, documents, or electronic files owned by the plaintiff. *See id.* In contrast, TKE's claim is based on actual computer files and programs TKE owned that Shropshire allegedly downloaded, without authorization or permission, for his own personal use. Adopting the court's rationale from *Kolon,* the court finds that TKE's allegations that Shropshire stole its electronic data are sufficient to state a plausible conversion claim. *See* 2011 WL 4625760, at *5.

Shropshire also argues that TKE's VUTSA claim preempts its conversion claim. The VUTSA "reflects the General Assembly's decision to protect the owner of a trade secret from another's misuse of that secret," *MicroStrategy Inc. v. Li*, 601 S.E.2d 580, 588 (Va. 2004), and expressly preempts "conflicting tort, restitutionary, and other law of this Commonwealth providing civil remedies for misappropriation of a trade secret," Va. Code Ann. § 59.1-341(A). This provision "is intended to preclude only those common law claims . . . premised *entirely* on a claim for misappropriation of a trade secret." *AWP, Inc. v. Commonwealth Excavating, Inc.*, No.

5:13cv31, 2013 WL 3830500, at *6 (W.D. Va. July 24, 2013) (citing *Smithfield Ham & Prods. Co. v. Portion Pac, Inc.*, 905 F. Supp. 346, 348 (E.D. Va. 1995)); *see* Va. Code Ann. § 59.1-341(B)(2).

Where a plaintiff alleges conversion of confidential information alongside a misappropriation-of-trade-secrets claim, courts have found it premature to consider the VUTSA's preemption provision. *See AWP*, 2013 WL 3830500, at *6–7 (where the plaintiff alleged theft of "other confidential business information which may not qualify as a trade secret," the court held that "proper consideration of the preemption issue must await further factual development"); *E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc.*, 688 F. Supp. 2d 443, 453 (E.D. Va. 2009) (finding plaintiff's use of the "conjunctive language" "confidential information and trade secrets" throughout the complaint sufficient to state a conversion claim at the motion to dismiss stage); *Anderson v. Fluor Intercontinental, Inc.*, No. 1:19-cv-0289, 2021 WL 837335, at *17 (E.D. Va. Jan. 4, 2021) ("Courts hesitate to assign the label of 'VUTSA trade secret' to proprietary information at the pleadings stage for fear of depriving parties the opportunity to conduct fact-finding on the issue."); *Stone Castle Fin., Inc. v. Friedman, Billings, Ramsey & Co.*, 191 F. Supp. 2d 652, 659 (E.D. Va. 2002) (concluding that, "unless it can be clearly discerned that the information in question constitutes a trade secret, the Court cannot dismiss alternative theories of relief as preempted by the VUTSA").

TKE has alleged throughout its complaint that Shropshire downloaded files containing its "confidential and trade secret information." (*See, e.g.*, Compl. ¶¶ 10, 16, 21, 27, 29, 30.) TKE describes the information Shropshire allegedly converted as "confidential construction drawings and wiring instructions," "links for downloading each job's proprietary software," and "bills of materials containing shipping and packing lists for each job . . . ." (*Id.* ¶ 21.) The

court cannot "clearly discern[]" from the pleadings that all of the information at issue constitutes a trade secret. *See Stone Castle*, 191 F. Supp. 2d at 659. Accordingly, the court cannot conclude, at this stage, that TKE's conversion claim is premised *entirely* on Shropshire's alleged misappropriation of its trade secrets such that VUTSA preempts the claim. The court will deny Shropshire's motion to dismiss as to Count I.

### 2. Unfair Competition (Count III)

Shropshire next moves to dismiss TKE's unfair competition claim. According to the Supreme Court of Virginia, "[t]he essential element of unfair [competition] is deception, by means of which goods of one dealer are palmed off as those of another, whereby the buyer is deceived, and the seller receives the profit which, but for such deception, he would not have received." *Benjamin T. Crump Co. v. J.L. Lindsay, Inc.*, 107 S.E. 679, 684 (Va. 1921). "The threat of unfair competition must be directed not at the complaining party, but at its customers or other third parties." *Power Home Solar, LLC v. Sigora Solar, LLC*, No. 3:20cv42, 2021 WL 3856459, at *11 (W.D. Va. Aug. 30, 2021) (internal quotation marks omitted). Virginia courts "adhere to a narrow definition of unfair competition." *Id.* (internal quotation marks omitted).

Shropshire correctly argues that TKE's unfair competition claim must be dismissed because TKE fails to allege that Shropshire attempted to portray Integral's services as TKE's services. TKE's allegations as to this claim include that Shropshire (1) worked for both Integral and TKE at the same time, (2) "misappropriated" TKE's confidential information, and (3) misused TKE's computer system by downloading confidential information for Integral's benefit. (*See* Compl. ¶¶ 50–57.) But TKE makes no allegations that Shropshire misrepresented anything to the public such that its customers (or potential customers) would be deceived into

thinking they were hiring or working with TKE when they were, in fact, hiring or working with Integral. The only allegation in the complaint that relates to a public representation Shropshire made is that, on LinkedIn, he stated that Integral "perform[ed] elevator maintenance and repair." (*See id.* ¶ 28.)

Because TKE does not allege that Shropshire or Integral held themselves out as TKE, the court will grant Shropshire's motion to dismiss as to Count III. *Accord Phoenix Renovation Corp. v. Rodriguez*, 403 F. Supp. 2d 510, 518 (E.D. Va. 2005) (dismissing unfair competition claim because there was "no allegation that [the defendant] is attempting to deceive the buying public by holding itself out as [the plaintiff]"); *Power Home Solar*, 2021 WL 3856459, at *11 (dismissing unfair competition claim because plaintiff's allegations "do not establish the 'essential element' of 'deception' under Virginia law").

### 3. Defend Trade Secrets Act (Count V)

"Under the DTSA, a trade-secret owner may bring a civil action in federal court if a trade secret is 'misappropriated' and 'related to a product or service used in, or intended for use in, interstate or foreign commerce.'" *Power Home Solar*, 2021 WL 3856459, at *8 (citing 18 U.S.C. § 1836(b)(1)). To state a claim under the DTSA, a plaintiff must allege that (1) it owns a trade secret, (2) the trade secret was misappropriated, and (3) the trade secret implicates interstate or foreign commerce. *See id.* Shropshire argues that TKE has not alleged that the trade secrets that Shropshire misappropriated "implicate interstate or foreign commerce,"[3]

---

[3] Shropshire concedes that TKE "has sufficiently alleged it owns trade secrets that were misappropriated by Shropshire." (Def.'s Br. Supp. Mot. Dismiss at 7 [ECF No. 6].)

and the claim should therefore be dismissed. (Def.'s Br. Supp. Mot. Dismiss at 7 [ECF No. 6].)

In its complaint, TKE alleges that it is "engaged in the business of selling, servicing, repairing, and modernizing elevator systems throughout the United States, and in the Roanoke, Virginia area." (Compl. ¶ 8.) As to its DTSA claim specifically, TKE states that its trade secrets "involve and relate[] to services intended to be used in interstate commerce." (*Id.* ¶ 75.) TKE also alleges that Shropshire worked exclusively out of TKE's Roanoke office during his employment and that the job files he downloaded "are unique to *every* TKE elevator installed and serviced from the Roanoke branch." (*Id.* ¶¶ 15, 21 (emphasis in original).) Shropshire asks the court to deduce from this office location that none of the trade secrets that TKE alleges Shropshire misappropriated implicate interstate or foreign commerce.

"At the motion to dismiss stage, it is sufficient that [the plaintiff] alleges that its . . . business is both national and international. As a result, the court may easily infer that the purported information relates to services used and intended for use in interstate and foreign commerce." *Philips N. Am. LLC v. Hayes*, No. ELH-20-1409, 2020 WL 5407796, at *11 (D. Md. Sept. 9, 2020). TKE alleges that it provides services throughout the United States. Thus, the court finds it reasonable to infer, at this stage, that the alleged trade secrets implicate interstate commerce.[4] *See Bonumose Biochem, LLC v. Yi-Heng Zhang*, No. 3:17cv33, 2018 WL 10069553, at *6 n.6, *9 (W.D. Va. May 21, 2018) (Report and Recommendation) (finding that a complaint alleged "an interstate or foreign commerce nexus" where it stated that there could

---

[4] It is well-settled that, at the motion to dismiss stage, the court draws "all reasonable inferences in favor of the" non-moving party. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009).

be a multi-billion-dollar annual global market for the plaintiff's product), *adopted by* 2018 WL 10068672, at *1 (W.D. Va. June 11, 2018).

This reasonable inference is bolstered by the specific types of trade secret information that TKE identifies:

> the identity of [its] customers, its customer contacts, its customers' needs, its contracts with customers, construction drawings, wiring instructions, proprietary software for each customer job, "job files" (that contain construction drawings, wiring instructions, and links for proprietary software for each client job), bills of materials (that contain the shipping and packing lists for each job along with the particular components that were shipped), and contract overview reports.

(Compl. ¶ 10.) The court infers that many of these categories—particularly construction drawings, wiring instructions, proprietary software, shipping and packing lists—describe information that is used across the company and is not necessarily exclusive to TKE's operations in Virginia. *See Space Sys./Loral, LLC v. Orbital ATK, Inc.*, 306 F. Supp. 3d 845, 854 (E.D. Va. 2018) (finding the complaint sufficiently alleged that trade secrets implicated interstate or foreign commerce "because it contains business plans, procurement strategies and subcontractor and vendor relationships"). Accordingly, the court will deny Shropshire's motion to dismiss Count V.

### 4. Virginia Computer Crimes Act (Count VI)

The VCCA prohibits "any person, with malicious intent, or through intentionally deceptive means and without authority" from "us[ing] a computer or computer network to make or cause to be made an unauthorized copy . . . of computer data, computer programs, or computer software . . . ." Va. Code Ann. § 18.2-152.4(A)(6). "[I]t is clear that the VCCA's definition of use of a computer network without authority applies when a person acts in a

manner knowingly exceeding such right, agreement, or permission." *Space Sys.*, 306 F. Supp. 3d at 855–56. The VCCA is a criminal statute, but the Virginia General Assembly created a civil remedy for any violations of the Act. *See* Va. Code Ann. § 18.2-152.12.

TKE claims that Shropshire violated the VCCA when he "misused TKE's computer and network" and "unlawfully insert[ed] a mobile electronic storage device" into his tablet and downloaded over 1,500 files. (Compl. ¶ 80.) Shropshire moves to dismiss TKE's VCCA claim on the same grounds as the conversion claim—that the VUTSA preempts "conflicting tort, restitutionary, and other law of this Commonwealth providing civil remedies for misappropriation of a trade secret." *See* Va. Code Ann. § 59.1-341(A). But, as discussed above, TKE's claims are not "premised *entirely* on a claim for misappropriation of a trade secret." *See AWP*, 2013 WL 3830500, at *6. TKE also alleges that Shropshire downloaded "confidential information," and specifically lists several categories of information contained within the files Shropshire obtained. (*See* Compl. ¶¶ 10, 21–22, 33.) Because the court cannot "clearly discern[]" from the pleadings that all of the information at issue constitutes a trade secret, it cannot find, at this stage, that TKE's VCCA claim is preempted by the VUTSA. *See Marsteller v. ECS Fed., Inc.*, 2013 WL 4781786, at *6 (E.D. Va. Sept. 5, 2013) (sustaining a VCCA claim where the trade secret status of the allegedly misappropriated information was disputed at the motion to dismiss stage). Shropshire's motion to dismiss will be denied as to Count VI.

### 5. Fraud (Counterclaim Count I)

Shropshire brings his counterclaim for fraud based on statements TKE made in its cease-and-desist letter on May 3, 2021. TKE moves to dismiss this counterclaim, arguing that

Shropshire does not adequately plead that TKE made a false representation.[5] The court agrees and will grant TKE's motion to dismiss the fraud counterclaim.

Shropshire bases his counterclaim primarily on statements made in one paragraph of TKE's cease-and-desist letter:

> Accordingly, you are hereby on notice to cease and desist from any use or disclosure of TKE's confidential information, and you must contact the undersigned by the close of business on May 4, 2021 to provide assurances of your cooperation to address the Company's misappropriated information. Do not delete or destroy the TKE information in your possession at this time. TKE expects that you permit a full forensic inspection of any electronic equipment, including the My Passport external device and USB drive, that may contain the information you wrongfully misappropriated so that the Company can verify that you have not transferred or disclosed it to any third parties, or used it for any improper purposes. TKE also will seek to verify that all of its confidential information has been permanently deleted from any devices in your possession or control. **If you fail to corporate[6] [*sic*], TKE will proceed to seek relief from a court and hold you fully accountable for this wrongdoing.**

(Countercl. ¶ 3 (emphasis in original).) After Shropshire received this letter, he hired an attorney. Counsel for both parties coordinated with TKE's third-party forensic expert to retrieve and delete all the allegedly misappropriated files. Shropshire alleges that, when he delivered the devices on May 11, 2021, "TKE represented to Shropshire that the subject information would be deleted and his devices would be returned in approximately one week." (*Id.* ¶ 5.) On June 28, 2021, TKE informed Shropshire that the forensic expert had finished

---

[5] TKE also contends that Shropshire did not reasonably rely on any false representations it may have made, and asserts that a fraud claim cannot be based on a promise of refraining from future conduct. Because the court finds other adequate grounds to dismiss the counterclaim, it will not address these arguments.

[6] The parties both agree that TKE intended this word to read "cooperate" and Shropshire understood it to be "cooperate." (Pl.'s Br. Supp. Mot. Dismiss at 5 n.4 [ECF No. 12].)

deleting the files and "insisted, for the first time, that Shropshire agree to various terms and conditions, including payment of a substantial monetary amount" before it would return his devices. (*Id.* ¶ 7.) When Shropshire refused, TKE returned his devices and filed this lawsuit. Shropshire alleges that, once he received his devices back, he discovered that TKE had deleted several personal files and corrupted his computer's operating system.

In Virginia, to state a claim for fraud, a party must allege "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled."[7] *State Farm Mut. Auto. Ins. Co. v. Remley*, 618 S.E.2d 316, 321 (Va. 2005). Additionally, Federal Rule of Civil Procedure 9(b) requires that parties plead fraud claims with "particularity." "[T]he circumstances required to be pled with particularity under Rule 9(b) are the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *McCauley v. Home Loan Inv. Bank, F.S.B.*, 710 F.3d 551, 559 (4th Cir. 2013) (internal quotation marks and citation omitted).

Shropshire's fraud claim fails because he does not point to any false representation that TKE made to him. Shropshire primarily focuses on one statement[8] in TKE's cease-and-desist

---

[7] These elements are sufficient to state a claim for *actual* fraud. *State Farm*, 618 S.E.2d at 321. A party may also state a claim for *constructive* fraud by alleging "a false representation of a material fact was made innocently or negligently, and the injured party was damaged as a result of his reliance upon the misrepresentation." *Id.* at 321 (cleaned up). Most relevant to this motion, both actual and constructive fraud require a party to allege that the opposing party made a false representation.

[8] Shropshire also appears to allege that TKE made a second false representation to him. TKE told him that the files would be deleted, and his devices would be returned approximately one week from May 11, 2021, and then did not return his devices until June 28, 2021. But Shropshire does not provide the time, place, or identity of the speaker. As such, these allegations do not meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b).

letter: "If you fail to [cooperate], TKE will proceed to seek relief from a court and hold you fully accountable for this wrongdoing." (Countercl. ¶ 3.) In Shropshire's view, this statement constitutes a promise by TKE not to sue if he cooperates. But this view ignores the full context of the letter and the other statements contained therein.[9] TKE noted in the letter that Shropshire's "actions raise several legal causes of action that [TKE] is fully prepared to immediately pursue—and pursue aggressively—against" him. (Pl.'s Br. Supp. Mot. Dismiss, Ex. 1 p. 17 [ECF No. 12].) TKE concluded the letter by stating that it "does not waive and fully reserves all available rights and remedies." (*Id.* at 18.)

Moreover, TKE's letter simply conveys that, if Shropshire does not cooperate, TKE will sue. The letter does not expressly define all the steps Shropshire must go through to "cooperate" nor does it explicitly promise *not* to sue if Shropshire provides his devices for professional deletion. Contrary to Shropshire's proffered interpretation of the letter, TKE does not tell Shropshire what will happen *if he cooperates*; it only delineates what would happen *if he doesn't*.

Because Shropshire has failed to allege that TKE made any false representations, the court will grant TKE's motion to dismiss Shropshire's fraud counterclaim.

---

[9] TKE attached the cease-and-desist letter as Exhibit 1 to its brief in support of its motion to dismiss. In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court is "not confined to the four corners of the complaint" and "may also consider documents incorporated into the complaint by reference . . . ." *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014) (internal quotations omitted).

## IV. Conclusion

For these reasons the court will grant Shropshire's motion to dismiss (ECF No. 5) with respect to TKE's unfair competition claim and deny his motion to dismiss with respect to TKE's conversion, DTSA, and VCCA claims. The court will also grant TKE's motion to dismiss Shropshire's fraud counterclaim (ECF No. 11).

The clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to all counsel of record.

**ENTERED** this 23rd day of February, 2022.

                                            */s/ Thomas T. Cullen*
                                            HON. THOMAS T. CULLEN
                                            UNITED STATES DISTRICT JUDGE